UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF KING FISHER MARINE | § | |
| SERVICE, LP, AS OWNER OF THE | § | |
| DREDGE LEONARD M. FISHER, ITS | § | CIVIL ACTION NO. H-06-3909 |
| ENGINES, TACKLE, APPAREL, ETC. | § | |
| IN A CAUSE FOR EXONERATION | § | |
| FROM OR LIMITATION OF | § | |
| LIABILITY | § | |

MEMORANDUM AND ORDER

Before the Court in this admiralty/maritime action are the Motions to Dismiss filed by Claimants Mario Rodriguez and Juan Gonzalez. After considering the parties' filings and the applicable law, the Court finds that the motions, Docket Nos. 9 and 10, should be and hereby are **DENIED**.

I.    BACKGROUND

Petitioner King Fisher Marine Service is a Texas limited partnership and the owner of the dredge Leonard M. Fisher. On December 15, 2005, the Leonard M. Fisher commenced a voyage in Corpus Christi, Texas, arriving in Port Arthur, Texas on April 13, 2006. Two crew members claim that they were hurt during the voyage. Second Engineer Juan J. Gonzalez allegedly suffered injuries to his shoulder and lower back on January 30, 2006, after a slip and fall in the engine room. Deckhand Mario Rodriguez claims that he suffered hand injuries after an explosion on March 16, 2006.

Gonzalez and Rodriguez have both filed suit in Texas state court under the Jones Act and general maritime law, asserting that their injuries were caused by, *inter alia*, King Fisher's negligence and the unseaworthiness of the Leonard M. Fisher. King Fisher instituted this case under the Limitation of Liability Act, seeking exoneration from or

1

limitation of liability associated with the two injuries.  King Fisher has submitted an affidavit of value and ad interim stipulation of value, stating that the value of its interest in the Leonard M. Fisher and associated gear does not exceed $1,600,000.

Gonzalez and Rodriguez, hereafter referred to as "Claimants," have filed claims in this suit for past and future physical pain, mental anguish, physical impairment, disfigurement, loss of earnings and wage earning capacity, loss of household services, and medical expenses.  Claimants further assert that they are seamen entitled to maintenance and cure, and that King Fisher's liability should be increased to the value of the dredge flotilla, which they contend will exceed $1.6 million.  Claimants now move to dismiss this limitation of liability suit on the theory that King Fisher should have filed separate limitation cases for each alleged injury.

## II.    ANALYSIS

### A.  Failure to State a Claim

Claimants both move to dismiss Plaintiff's complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6) (2006).  A district court will dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief."  *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994).  When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff."  *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

**B.  The "Distinct Occasion Rule"**

Claimants' motions to dismiss hinge on one issue – whether the injuries suffered by Gonzalez and Rodriguez may be addressed in a single limitation of liability suit. Claimants argue that they may not, and that the "distinct occasion" doctrine and the Limitation of Liability Act mandate filing separate proceedings for Gonzalez and Rodriguez.  According to Claimants, the Court should dismiss the case with prejudice, or dismiss without prejudice and require King Fisher to refile two separate suits.

Claimants rely heavily on a 1989 Fifth Circuit case, *Exxon Shipping Co. v. Cailleteau*, 869 F.2d 843 (5th Cir. 1989).  In *Exxon Shipping*, a barge exploded and sank, resulting in injuries and deaths.  Two days later, another barge collided with the wreckage of the first barge.  Claims were eventually filed relating to both incidents, and Exxon instituted a cause for exoneration from or limitation of liability with regard to the explosion.  A question arose as to whether Exxon had filed its limitation suit within the required six-month window after receiving notice of a claim; the filing occurred less than four months after Exxon received notice of the explosion-related claim, but more than six months after receiving notice of the collision-related claim.   Essentially, if the explosion and collision were treated as one liability event, Exxon's filing would be untimely.  If they were separate events, however, Exxon's filing would fall well within the six-month window after receiving notice of the explosion-related claim.

To determine whether the explosion and collision were one event or two, the Fifth Circuit examined the "distinct occasion" rule, then codified at 46 U.S.C. app. § 183(d). Under that rule, "The owner of any such seagoing vessel shall be liable in respect of loss of life or bodily injury arising on distinct occasions to the same extent as if no other loss

of life or bodily injury had arisen." While Section 183(d) did not actually apply in *Exxon Shipping* because the definition of "seagoing vessel" did not include barges, the Court found it useful to examine the rationale behind the rule. According to the Court, "Section 183(d) prevents a shipowner from limiting to a single fund all injuries occurring on a voyage." *Exxon Shipping*, 869 F.2d at 847. The Section was intended to prevent situations where "the shipowner was able to limit his entire liability to the value of the vessel even though there was more than one accident involving injury on the voyage." *Id.* Instead, "there will be a fund set up for each separate event." *Id.* at 848. Under *Exxon Shipping*, a court must test for "distinct occasions" by ascertaining whether "successive collisions occur as a result of the same negligent act," in which case "all constitute one 'distinct occasion,' but if there is time and opportunity after the first collision to take action which would avoid the second collision, each is a 'distinct occasion.'" *Id.* at 847 (internal citation omitted). Applying this reasoning, the Fifth Circuit concluded that the explosion and collision were to be treated as separate events with different notice of claim dates, and that Exxon had timely filed its limitation suit. *Id.* at 848.

Claimants argue that, under *Exxon Shipping*, a limitation of liability proceeding cannot group multiple occurrences into a single liability event. Claimants point especially to the Fifth Circuit's statement that "simply because the owner of the ship is liable for both occurrences does not mandate that the occurrences be lumped together as one unit of limitation." *Id.* King Fisher counters that Claimants are misreading Fifth Circuit precedent. According to King Fisher, *Exxon Shipping* does not require separate limitation proceedings, and indeed expressly holds that *a voyage* is the unit of limitation.

Therefore, all incidents occurring on a single voyage may be addressed in a single limitation suit.

In the Court's view, *Exxon Shipping* clearly does not stand for the proposition urged by Claimants, and likely does not entirely support King Fisher's theory either. *Exxon Shipping* could be read to prohibit the establishment of only one limitation fund when multiple injuries occur during a voyage, but nothing in the case endorses the far more severe remedy of dismissal. Although the liability of a ship owner for multiple incidents "does not *mandate* that the occurrences be lumped together as one unit of limitation" (emphasis added), *Exxon Shipping* does not *bar* addressing multiple incidents during a single voyage in the same limitation proceeding.

On the other hand, the Court does not share King Fisher's confidence that *Exxon Shipping* establishes the voyage as the unit of limitation, no matter how many separate, unrelated incidents occur.[1] The Fifth Circuit seems to have expressed a clear preference in *Exxon Shipping* for multiple limitation funds corresponding with multiple incidents.

---

[1] In fact, the language from *Exxon Shipping* that most strongly supports King Fisher's arguments may rely on an incomplete reading of a learned treatise on admiralty. King Fisher emphasizes the following language from *Exxon Shipping*: "When a ship is not on a voyage, as was the situation of the Exxon barge, the measure or unit for limitation of liability is 'the event, accident or disaster giving rise to the claim or group of claims.'" *Id.* at 846 (quoting 3 *Benedict on Admiralty* § 53, at 6-11 (7th ed. 2005)). King Fisher reasons by inference that when a ship *is* on a voyage, the unit for limitation of liability is the voyage itself. *Benedict on Admiralty* indeed states that "[t]he unit of limitation, when a vessel is not on a voyage, has always been the event, accident or disaster giving rise to the claim or group of claims," and that "the courts have seized upon the expression *freight for the voyage* as a sure indication that the voyage is the unit for claims as well as for values to be surrendered." 3 *Benedict on Admiralty* § 53, at 6-7, 6-11. However, *Benedict* goes on to aver that "[t]he Acts of 1935 and 1936 now provide that claims for loss of life and bodily injury, as a special class, shall be grouped, not by voyages, but by 'distinct occasions,' to the same extent as if no other loss of life or bodily injury had 'arisen' or occurred." *Id.* at 6-11 to 6-12. This special treatment afforded to incidents involving personal injury or death persists in the most recent version of the Limitation of Liability Act, and goes unmentioned in *Exxon Shipping*. *Compare* 46 U.S.C. § 30505 (2006) (governing "general limit[s] of liability," with no provision referring to separate limits of liability for distinct occurrences), *with* 46 U.S.C. § 30506 (2006) (pertaining to "limit[s] of liability for personal injury or death," with subpart (d) specifically addressing "Claims arising on distinct occasions"). Therefore, while the default unit of limitation for a ship on a voyage may well be the voyage itself, the same may not hold true in the case of claims arising from loss of life and bodily injury.

Further, after applying the "distinct occurrence" test as set forth in the case, the injuries suffered by Gonzalez and Rodriguez aboard the Leonard M. Fisher may well constitute separate incidents.[2]  The Court need not articulate a definitive interpretation of *Exxon Shipping*, however, because it is clear enough that the case does not support granting the relief sought by Claimants in their motions to dismiss.

Claimants also point to the language of the Limitation of Liability Act itself, now codified at 46 U.S.C. § 30506, which provides that "[s]eparate limits of liability apply to claims for personal injury or death arising on distinct occasions."  46 U.S.C. § 30506(d). King Fisher counters, however, that Section 30506 does not apply to the dredge Leonard M. Fisher, because it is not a "seagoing vessel."  *See id.* at § 30506(a) ("This section applies only to seagoing vessels, but does not apply to pleasure yachts, tugs, towboats, towing vessels, tank vessels, fishing vessels, fish tender vessels, canal boats, scows, car floats, barges, lighters, or nondescript vessels.").  King Fisher points to *Talbott Big Foot, Inc. v. Boudreax*, 854 F.2d 758 (5th Cir. 1988), which sets forth the following test for a

---

[2]  The Court acknowledges the somewhat confusing language near the end of *Exxon Shipping:* "Our situation is analogous to the situation in which after a vessel's voyage ends with a wreck, a subsequent collision occurs with the wreck.  The limitation fund *as to the voyage* applies only to claims arising during the voyage and not to claims arising subsequent thereto, such as a collision with the wreckage." *Id.* at 848. This passage can be read to suggest that a voyage is a single unit for the purpose of establishing a limitation fund, no matter how many separate incidents occur.  However, viewed in a different light, the phrase "claims arising during the voyage" could actually refer to *multiple claims arising from a single incident* during a voyage.  The Court observes that the quoted language refers to only a single incident during a voyage – a wreck.  Therefore, this passage does not necessarily apply to the situation at bar, where multiple, possibly unrelated liability events occurred during a voyage.

The same interpretation could apply to a case which King Fisher frequently cites, *In re Geophysical Serv., Inc.*, 590 F. Supp. 1346 (S.D. Tex. 1984).  King Fisher highlights the dictum in that case that the Limitation of Liability Act is intended to allow a shipowner "facing multiple suits arising out of one voyage to bring the claimants into one proceeding to apportion the owner's liability."  The facts of *Geophysical Service* involved a single incident during a voyage – the sinking of a research vessel – that resulted in thirteen deaths and numerous claims and lawsuits filed in various courts.  In emphasizing the shipowner's ability under the Limitation of Liability Act to file one limitation proceeding covering all of those claims, *Geophysical Service* does not *necessarily* hold that the same principles would apply to multiple claims stemming from numerous unrelated incidents during a voyage.

"seagoing vessel" under the Limitation of Liability Act: "We conclude that the inquiry to determine whether a particular vessel is 'seagoing' under § 183(b) . . . is whether the vessel does, or is intended to, navigate in the seas beyond the Boundary Line [twelve nautical miles from the Gulf Coast] in the regular course of its operations. . . . the court must find that . . . it will be normally expected to engage in substantial operations beyond the nautical boundary." *Id.* at 761-62.  King Fisher has attached an affidavit by Wayne Boyd, President of King Fisher, stating that the Leonard M. Fisher does not meet the *Talbott* definition of a seagoing vessel.

*Talbott* likely does control in this case, in which Section 30506 would not apply to the Leonard M. Fisher.  *See also Tom-Mac, Inc. v. Biela*, 76 F.3d 678, 683 n.4 (5th Cir. 1996) (affirming that *Talbott* states the test for determining whether a craft is a "vessel" under the Limitation Act); *In re TT Boat Corp.*, No. CIV A 98-494, 1999 WL 223165 at *12 (E.D.La. Apr. 14, 1999) (applying the *Talbott* test for a seagoing vessel).  Again, however, the Court need not finally determine the issue, because Section 30506 clearly does not mandate dismissal of a suit involving multiple injuries during a single voyage. At most, if Claimants' injuries were found to constitute distinct occasions, Section 30506 would require separate limits of liability for each.  The language of the Limitation of Liability Act simply does not compel the relief sought by Claimants.

Indeed, the Court has been unable to identify any other authority calling for the dismissal sought by Claimants, or verifying their claim that "only where claimants suffer injury in the same, single occurrence have courts authorized a single filing of a limitation of liability petition alongside a single limitation fund."  Claimants' Reply 2.  No case cited by Claimants supports this conclusion.  Indeed, two other courts have taken far

more moderate approaches when faced with the issue of "distinct occurrences."  In *In re Alva Steamship Co., Ltd.*, 262 F. Supp. 328 (S.D.N.Y. 1966), the court considered whether to sever (not dismiss) claims arising from a collision and subsequent explosion. In the end, the court found that more facts needed to be developed to determine whether or not both incidents stemmed from the same negligent conduct, and saw no reason to sever the claims in the interim.  In *In re Complaint of Hollywood Marine, Inc.*, No. CIV.A. 99-3839, 2000 WL 461659 (E.D.La. Apr. 20, 2000), the Eastern District of Louisiana opined that if the distinct occasion rule were to apply in the case, "the fact that there were separate distinct occasions would not be cause to dismiss this petition, although it would give rise to an argument that the claimants were not limited to the value of one barge when there were distinct occasions causing injury."  *Hollywood Marine*, 2000 WL 461659 at *2.

In the case at bar, although it appears unlikely that Claimants' injuries were related, virtually no facts have been presented to the Court regarding the causes of the injuries and the negligent conduct, if any, on the part of King Fisher.  Following the example of *Alva Steamship*, then, the Court would be hesitant even to perform the "distinct occurrence" analysis at this early stage in the case.  Further, even if the Court were to conclude that the injuries were distinct occurrences, the Court sees no reason to dismiss King Fisher's cause for exoneration from or limitation of liability on that ground, although the parties could certainly argue over the appropriateness of separate limitation funds.  Therefore, Claimants' motions to dismiss must be denied.

III.    CONCLUSION

The Motions to Dismiss filed by Claimants Mario Rodriguez and Juan Gonzalez

are hereby **DENIED.**

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 17th day of May, 2007.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**